# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>DANTE L. GRAF,<br><br>     Defendant. | Case No. 13-CR-54-JPS<br><br>**ORDER** |

**1. BACKGROUND**

On October 22, 2020, Defendant filed a motion for compassionate release. (Docket #53). Federal Defender Services ("FDS") informed the Court that it would be filing a supplement on behalf of Defendant, (Docket #56), however, on December 7, 2020, FDS filed a motion on Defendant's behalf requesting that the Court appoint counsel to represent Defendant, (Docket #60). The Court ordered that the Government respond before the Court would act on the motion to appoint counsel. (Docket #61). On January 7, 2021, the Government filed a response. (Docket #64). Defendant also filed multiple addendums and updates. (Docket #55, #59, #67, #69, #74, #75, #77). The Court has reviewed these submissions and will deny Defendant's motion for compassionate release.

**2. FACTS**

Defendant is in prison because he sold counterfeit currency. As part an investigation into Defendant, law enforcement arranged for two controlled transactions in which Defendant sold more than $1,800 of counterfeit currency to a confidential informant. (Docket #25 at 5–6). On September 26, 2013, Defendant entered a guilty plea. (Docket #17).

Sentencing was set for January 7, 2014, however, between the plea hearing and sentencing date, Defendant committed several violations of his bond conditions, and the court set a hearing to consider whether to revoke his bond. (Docket #22, #25 at 6). Defendant failed to appear at that hearing and remained at large until he was arrested in March 2014. (*Id.*) In March, police responded to a report of gunshots outside a tavern. (*Id.* at 20–21). When the police arrived, they located Defendant, who refused to comply with their demands and, after a struggle with the police, drove off. (*Id.*) He was later subdued and arrested. (*Id.*) He had cocaine and a firearm in his possession. (*Id.*) The federal proceedings were put on hold as Defendant went to trial on (and was eventually convicted of) state charges stemming from the incident. (Docket #64 at 10). The federal court then sentenced Defendant to 63 months in prison, which was the high-end of the applicable guidelines range, to be served consecutive to his state-court sentence. (*Id.* at 11).

Defendant's criminal history is extensive, beginning at age ten. (Docket #25 at 10). His adult convictions include the following: fleeing and operating vehicle without consent in 1995 (2 years in prison, parole revoked twice); resisting an officer in 2001 (15 months in prison); issuing worthless checks in 2002 (1 year of probation); issuing worthless checks again in 2002 (20 days in jail); obstruction of an officer in 2003 (100 days in jail); obstruction of an officer again in 2004 (10 days in jail); retail theft in 2006 (60 days jail); issuing worthless checks in 2007 (2 years of probation); resisting an officer again in 2011 (100 days in jail); and being a felon in possession of firearm, possession of cocaine, and resisting an officer in 2014 (about 5 years prison). (*Id.* at 10–21). During his incarceration, he has had one disciplinary incident in which he was sanctioned for "threatening

bodily harm." (Docket #64-1). He is not anticipated to be released by BOP until August 8, 2023. (*Id.*)

Defendant is a 42-year-old male. (Docket #25 at 4). He appears to suffer from a variety of health conditions, including high blood pressure, diabetes, a physical abnormality of a bone in his chest, a seizure disorder, and a recent bout of pneumonia. (Docket #53 at 1–2). He appears to benefit from a variety of medications which were prescribed to treat some of these conditions. (*Id.*)

Defendant is currently detained at Federal Correctional Institution Beckley ("FCI Beckley") in Beaver, West Virginia. As of April 27, 2021, FCI Beckley reports that one inmate and no staff members have active cases of COVID-19.[1] No deaths have been reported, and 217 inmates and 87 staff have recovered from the virus.[2] Further, FCI Beckley is reporting that 191 of its staff and 936 of its inmates have been *fully* vaccinated.[3] The Government submitted an immunization record, which indicates that Defendant received a first dose of the Pfizer COVID-19 vaccine on January 21, 2021, (Docket #72); the Government also noted that it expected Defendant would soon be fully vaccinated, (Docket #70). Defendant refutes the accuracy of this record and states that he refused the vaccine; he submitted a consent form reflecting his refusal. (Docket #75).

3. **LEGAL STANDARD**

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights

---

[1]Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited May 3, 2021).

[2]*Id.*

[3]*Id.*

to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit recently held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, Case No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020). Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, Case No. 1:08-cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 n.1.(A)(ii).

The Court will also consider whether "the defendant is not a danger" to others or the community, as provided in 18 U.S.C. § 3142(g). *Id.* § 1B1.13(B)(2).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A). Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

## 4. ANALYSIS

First, the Government concedes that Defendant exhausted his administrative remedies. (Docket #64 at 6); *see Gunn*, 980 F.3d at 1179 ("Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it.") (internal citations omitted). The Court next determines whether Defendant has an extraordinary and compelling reason warranting his release.

The outbreak of COVID-19, together with a defendant's underlying medical conditions that place the defendant at "high risk" should he contract the disease, may establish an extraordinary and compelling reason warranting release. *See, e.g.*, *United States v. Gonzales*, Case No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). Here, Defendant suffers from multiple conditions which, according to the Centers for Disease Control and Prevention, may or do increase one's risk for severe illness from COVID-19. These conditions include high blood pressure and diabetes.[4] Defendant additionally suffers from a seizure disorder and some type of physical abnormally of a bone in his chest. By all accounts, Defendant is a sick man, and even the Government concedes that he likely has presented an extraordinary and compelling reason warranting his release. (Docket #64 at 8–9).

Still though, the Court cannot ignore the developments of the COVID-19 pandemic since the parties briefed this matter. While there

---

[4]Ctrs. for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), *Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 3, 2021).

remains an open question as to whether Defendant has received the vaccination, it is clear that FCI Beckley is well underway in vaccinating its population. The BOP's website shows that 191 of its staff and 936 of its inmates have been fully vaccinated.[5] Even where "[t]he available medical records do not indicate that [a defendant] has himself been vaccinated . . . federal courts recently have held that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk." *United States v. Collins*, No. 17-20360, 2021 WL 869651, at *5 (E.D. Mich. Mar. 8, 2021); *see also United States v. Sims*, No. 90-80492, 2021 WL 872218, at *3 (E.D. Mich. Mar. 9, 2021) ("[F]ederal courts have acknowledged that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk."); *United States v. McKay*, No. 1:18-CR-00339-PAC-7, 2021 WL 807108, at *4 (S.D.N.Y. Mar. 3, 2021) ("Moreover, the BOP has begun vaccinating both inmates and staff . . . . And with the BOP committed to vaccinating all prisoners during the upcoming months, . . . [defendant] will eventually receive the vaccine . . . [likely] more quickly in prison than outside of it.") (internal quotation and citation omitted).

The Court recognizes Defendant's feelings of frustration that his institution is not treating his risk of contracting the virus as serious as he feels it should. It may well be that he was told by guards that the virus was merely a "little super flu" which he could fight off. (Docket #67 at 2). Guards may also be refusing the vaccine, as Defendant fears. (Docket #77). But, at the very least, the administrative powers of the BOP have undertaken an effective and rapid effort to limit the spread of the COVID-19 virus, while

---

[5]Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited May 3, 2021).

maximizing the prevalence of the COVID-19 vaccine at FCI Beckley. Further, Defendant acknowledges that he was offered the vaccine but refused it as a personal choice. (Docket #75 at 2).

Next, even if Defendant had an extraordinary and compelling reason warranting his release, the Court must still consider whether he is a danger to any other person or the community, pursuant to § 3142(g), and whether the § 3553(a) factors militate against his release.

Defendant has already demonstrated a propensity for disregarding court-imposed conditions of release. He has failed to appear in court, remained at large from the law, and seriously violated the law while on release. His list of convictions spans well over a decade, and some of his bad behavior has continued into his sentence. While his present sentence stems from a non-violent offense, his history shows a lack of regard for the law and a continual willingness to return to crime. He has years left of his sentence, and the Section 3553(a) factors, including the need for just punishment, deterrence, and protection of the public, weigh heavily in favor of requiring Defendant to serve the entirety of his sentence. The Court will deny Defendant's motion for compassionate release.

5. **CONCLUSION**

Defendant has exhausted his administrative remedies. However, given the vaccination progress and low prevalence of the virus at FCI Beckley, Defendant has not proffered an extraordinary and compelling reason warranting his release. Further, the § 3553(a) factors strongly militate against his release. Therefore, the Court will deny Defendant's motion for compassionate release, (Docket #53). The Court will also deny Defendant's motion to appoint counsel, (Docket #60), as moot. Further, the Court will grant the Government's motions to seal, (Docket #65, #71).

Accordingly,

**IT IS ORDERED** that Defendant Dante L. Graf's motion for compassionate release (Docket #53) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Dante L. Graf's motion to appoint counsel (Docket #60) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that the Government's motions to seal (Docket #65, #71) be and the same are hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 3rd day of May, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge